The Honorable Nevin Smith Secretary Department of Administration Carlton Building Tallahassee, Florida 32301
Mr. Murray Dubbin Attorney for the Miami Beach Redevelopment Agency 444 Brickell Avenue Miami, Florida 33131
Dear Sirs:
This is in response to your request for an opinion on the following question:
 UNDER THE PROVISIONS OF CHAPTER 650, FLORIDA STATUTES, IS THE MIAMI BEACH REDEVELOPMENT AGENCY ELIGIBLE FOR SOCIAL SECURITY COVERAGE AS A `POLITICAL SUBDIVISION' UNDER SECTION 650.02(6), FLORIDA STATUTES?
Section 418, of the Social Security Act extends to employees of the state and local governmental employees on a voluntary basis the benefits provided by the Federal Old-age, Survivors, and Disability Insurance System (OASI), Subchapter II of Title 42 of the United States Code. The application of this insurance system to services performed by employees of a unit of local government is made on the basis of the legal relationship of the unit or agency to the state or one of its political subdivisions. The term `political subdivision' is defined at 42 U.S.C. § 418(b)(2) to include `an instrumentality of (A) a State, (B) one or more political subdivisions of a State, or (C) a State and one or more of its political subdivisions.'
Chapter 650 of the Florida Statutes sets forth the procedures under Florida law to implement the provisions of 42 U.S.C. § 418
and `to extend to employees of the state and its political subdivisions and to the dependents and survivors of such employees, the basic protection accorded to others by the Old-age and Survivors Insurance System embodied in the Social Security Act. . . .' Section 650.01, F.S. Section 650.02(6), F.S., defines `political subdivision' for Florida and its agreement with the federal government to include `an instrumentality of the state, or of one or more of its political subdivisions but only if such instrumentality is a juristic entity which is legally separate and distinct from the state or subdivision and only if its employees are not by virtue of their relation to such juristic entity employees of the state or subdivision[.]' Thus, in Florida an instrumentality of the state or one of its political subdivisions must be legally distinct and separate from the state or the political subdivision in question. While these two statutory definitions do not expressly include employees of political subdivisions such as counties or employees of municipalities, such employees are included in the Old-age, Survivors, and Disability Insurance System. See, e.g., AGO 057-365 which, among other things, concluded that municipalities are political subdivisions for purposes of 42 U.S.C. § 418.
It is the application of the statutory definition contained in Ch.650, F.S., to a community redevelopment agency established pursuant to Part III of Ch. 163, Florida Statutes, in order to determine whether the Miami Beach Redevelopment Agency is a `juristic entity' legally separate and distinct from the City of Miami Beach to which this opinion is expressly limited. A determination of whether the benefits of OASI should be extended to employees of the Miami Beach Redevelopment Agency under the terms of the agreement authorized pursuant to 42 U.S.C. § 418
between the State of Florida and the Secretary of Health and Human Services, however, must ultimately be made by the Division of Retirement of the Florida Department of Administration and the federal agency charged with the administration of the Social Security Act.
The Miami Beach Redevelopment Agency is a community redevelopment agency created pursuant to the authority granted in Part III of Chapter 163, F.S. The purpose for the creation of a redevelopment agency is the prevention and elimination of slums and blighted areas. Section 163.335, F.S. Upon a finding of necessity by a municipality in a resolution that one or more slums or blighted areas exist in the municipality and the rehabilitation, conservation, or redevelopment of such areas is necessary for the public health, safety, morals, or welfare, any municipality `may create a public body corporate and politic to be known as a community redevelopment agency.' Sections 163.355 and 163.356, F.S. Section 163.356 goes on to provide that `[e]ach such agency shall be constituted as a public instrumentality. . . .'
The governing body of the municipality, by ordinance, appoints the board of commissioners of the community redevelopment agency and designates the chairman and vice-chairman from among the commissioners. Section 163.356(2)(3), F.S. Subsection (3)(c) of that section goes on to require the redevelopment agency to `file with the governing body and with the Auditor General, on or before March 31 of each year, a report of its activities for the preceding calendar year, which report shall include a complete financial statement setting forth its assets, liabilities, income, and operating expense as of the end of such calendar year.' The governing body of the municipality `may appropriate to the [redevelopment] agency such amounts as the governing body deems necessary for the administrative expenses and overhead of the agency.' Id. (3)(d). Further, the governing body of the municipality is given the power to `remove a commissioner for inefficiency, neglect of duty, or misconduct in office' after notice and a hearing has been conducted. Id. (4).
Section 163.357, F.S., allows the governing body of a municipality, as an alternative to appointing a board of commissioners for an agency to declare itself to be the community redevelopment agency and to exercise all the powers, duties and immunities vested by Part III of Ch. 163 in such an agency, subject to all the responsibilities and liabilities imposed or incurred. However, even if a board of commissioners is appointed, the governing body of the municipality as provided in s 163.358, F.S., retains the following powers:
 (1) The power to determine an area to be a slum or blighted area, or combination thereof; to designate such area as appropriate for a community redevelopment project; and to hold any public hearings required with respect thereto.
 (2) The power to grant final approval to community redevelopment plans and modifications thereof.
 (3) The power to authorize the issuance of revenue bonds as set forth in s. 163.385.
 (4) The power to approve the acquisition, demolition, removal, or disposal of property as provided in s. 163.370(2) and the power to assume the responsibility to bear loss as provided in s. 163.370(2).
The governing body of a municipality has the authority to approve a community redevelopment project following a public hearing. Section 163.360, F.S. And the governing body of a municipality has the power to amend or modify a community redevelopment plan upon proper notice and public hearing. Section 163.361, F.S. The governing body of the municipality has the power to acquire by purchase, lease, grant or eminent domain or otherwise real property for use in a redevelopment project, s 163.370(1)(c)2., and to encumber or dispose of any real property, s 163.370(1)(c)4. Any municipality or community redevelopment agency as provided by municipal ordinance has the power to acquire by condemnation any interest in real property in connection with a redevelopment project and, as provided by ordinance, may exercise the power of eminent domain as provided in Chapters 73 and 74, F.S. Section 163.375(1), F.S. The governing body of the municipality has the power to authorize the issuance of revenue bonds, s 163.358(3), and only when authorized by resolution or ordinance of the governing body, does the redevelopment agency have the power to issue such bonds to finance its undertaking of a redevelopment project. Section 163.385(1), F.S. Finally, the governing body of the municipality and not the redevelopment agency has the authority to create a redevelopment trust fund. And no redevelopment agency may exercise any redevelopment powers to finance or refinance a redevelopment project unless and until the governing body has, by ordinance, provided for the funding of this trust fund for the duration of the redevelopment project. Section163.387(1), F.S.
It seems clear that a community redevelopment agency created by the governing body of a municipality pursuant to the authority contained in Part III of Chapter 163, F.S., is a public agency or instrumentality of the municipality. While as provided in s163.356(1) a community redevelopment agency is a public body corporate and politic, this governmental entity is a dependent agency of the municipality which is responsible for its creation, appointment of its board of commissioners, approval of redevelopment plans and other activities of the agency, and its funding, including administrative expenses and overhead, among other indicia of control.
Section 650.05, F.S., authorizes each political subdivision of the state `to submit for approval by the state agency a plan for extending the benefits of Title II of the Social Security Act, in conformity with the applicable provisions of such act, to employees of such political subdivisions.' The definition of `political subdivision' contained in subsection (6) of s 650.02, F.S., as set forth above, includes an instrumentality of one of the state's political subdivisions (in this case a municipality) `but only if such instrumentality is a juristic entity which is legally separate and distinct from the . . . subdivision and only if its [the instrumentality's] employees are not by virtue of their relation to such juristic entity employees of the . . . subdivision[.]' The Division of Retirement of the Department of Administration, the state agency vested with the authority and duty to administer Ch. 650, has determined that the Leesburg Redevelopment Agency is an instrumentality of the City of Leesburg and is therefore required to pay its social security contributions as an agency of the city. I concur with this conclusion and it is my opinion that a community redevelopment agency created pursuant to Part III of Ch. 163 while a public body corporate and politic is a dependent agency of the city and by virtue of the statutory provisions establishing the legal structure of a redevelopment agency, employees of such agency are employees of the city. Therefore, employees of a community redevelopment agency, would be entitled to benefits of the Old-age and Survivors Insurance System only if the city is included in the state's agreement with the Secretary of the Department of Health and Human Services.
My attention has been drawn to the case of State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla. 1980), for support of the proposition that the Miami Beach Redevelopment Agency is an independent governmental entity, i.e., `legally separate and distinct' from the municipality as provided by s 650.02(6), F.S. In that case the Florida Supreme Court upheld the validation of revenue bonds issued to fund a redevelopment project. Nothing in the Supreme Court's opinion could be construed to reach the conclusion that a redevelopment agency is a separate and independent juristic entity whose employees are not city employees. The Court in upholding the validation of the revenue bonds of the redevelopment agency determined that the issuance of the bonds was approved by the `governing body' which satisfied the requirement of s 163.385(3), F.S. Id. at 884. A review of the pertinent statutory provisions of Part III of Ch. 163, F.S., clearly illustrates the inextricable degree to which a redevelopment agency is dependent upon action taken by the governing body of the municipality. Cf. AGO 081-4 which concluded that employees of the Gainesville Development Authority for purposes of 42 U.S.C. § 418 and Chapter 650, F.S., are employees of the City of Gainesville.
In conclusion, it is my opinion that the Miami Beach Redevelopment Agency is an agency of the City of Miami Beach and not `a juristic entity which is legally separate and distinct' from the city within the purview and purpose of the Social Security Act and Ch.650, F.S., and therefore for the purposes of 42 U.S.C. § 418 and Ch. 650, F.S. employees of the Redevelopment Agency are city employees.
Sincerely,
Jim Smith Attorney General
Prepared by: Craig Willis, Assistant Attorney General